### 37153.   ADAIR   *v.*   PARK.

DECIDED JUNE 11, 1958.

720

*E. R. Lambert,* for plaintiff in error.

*A. F. Jenkins,* contra.

FELTON, Chief Judge. The defendant contends that the evidence shows that there had been a rescission of the contract or that the plaintiff had released him from his obligation under the contract. The defendant contends that this came about as a result of a conversation he had with the plaintiff during the last week of September of 1956. This conversation as testified to by the defendant was as follows: ". . . So I went over to Adair's place and he was in the front door. He came up there and got in the car. I said, 'Sam, I'm losing money where I am. There's no traffic on the street, now, and I either want Oldsmobile back while I've got this building or I want to move Frigidaire up on the Main Street where I will have a showroom'. Q. At that time, did you offer to take everything back that you had sold Mr. Adair? A. I did at that time, and offered to pay him cash for it at that time. There was no credit involved. Q. What was his answer? A. He said, 'Jim, you know it takes a lot of red tape. Chevrolet hasn't given me written approval yet, and I can't write Oldsmobile until I get written approval from Chevrolet.' Q. What did he say relative to oral approval? A. He said, 'I've got that. I can put some pressure up there in

Detroit. It's being held up in Detroit. Atlanta has already approved it. I can put some pressure up there.' I said, 'Well, I want to know now, Sam, because if I am going to have to buy this thing back, I want to buy it back now before I go ahead and rent the building up there on the main street.' He said, 'Well,' we've traded, Jim, and you haven't got anything to worry about that. It's going through.' Q. Did he at that time tell you to go on and take the other building? A. He said, 'We have traded and I've got the Oldsmobile franchise. I don't blame you and I'd go ahead and do something, too. There ain't nothing down here.' "

The defendant contends that this constituted a release and that he acted accordingly. The defendant further testified: "Q. I believe you testified that Sam told you that he had the Oldsmobile agency? A. Yeah, he told me he had the Oldsmobile agency. Q. And that he had oral approval of Chevrolet that he could have the Oldsmobile agency? A. That's correct. Q. And it took a red tape for the written approval to come through? A. That's right. Q. Did you give up your automobile building on the word that Mr. Adair gave you? A. *Yes. I was satisfied after he told me that, that there would be no further question about it.* Q. And then you rented a building that was not suitable for an automobile agency? A. That's right. Q. On the strength of your conversation with Mr. Adair? A. That's right."

In order for a release to be operative it must be mutually intended by both parties to the contract. We do not think that the plaintiff's statements made to the defendant amounted to a release nor that he misled the defendant as to any material facts or concealed any facts from the defendant which would operate as an estoppel. The plaintiff merely stated that he intended to stick by the agreement and that he felt that he would be approved by Chevrolet and Oldsmobile and that Oldsmobile would grant him the franchise. This was mere speculation and guess work on his part and the defendant had no right to rely on such speculation and guesses. The defendant further testified that he knew both Chevrolet and Oldsmobile had to consent in writing to the plaintiff's obtaining the Oldsmobile franchise and further

testified that at the time of the conversation he knew that Oldsmobile had not given a franchise to the plaintiff because a franchise had to be in writing and that at the time of the conversation he, the defendant, still had the franchise and that the plaintiff could not get the franchise so long as the defendant held such franchise. Knowing all of this, the defendant could not have been misled by any of the plaintiff's statements. The offer of the defendant to repurchase the parts the last week in September of 1956, was not a compliance with the contract because he knew at the time that negotiations for the Oldsmobile franchise had not been completed.

There is one additional reason why there was no rescission or release of the contract. A release or rescission must be supported by a consideration. In the instant case the contract had been performed by the plaintiff and remained executory only as to the defendant. "As to the proposition concerning the rescission of the agreement, argued by the defendant, the rule is that, while a contract remains executory on both sides, an agreement to annul on one side is a sufficient consideration for the agreement to annul on the other side. Where a contract has been partly executed on one side, other consideration is necessary. We have before us here an executed contract on the part of the plaintiff which leaves liability on the defendant. He cannot be relieved in the absence of consideration on his part." *Mylius* v. *Mylius*, 91 *Ga. App.* 1, 10 (84 S. E. 2d 679) ; 12 Am. Jur. 994, § 414, Contracts; *Suddath* v. *Blanchard & Calhoun*, 44 *Ga. App.* 149 (2) (160 S. E. 686). The evidence does not reveal that any consideration flowed to the plaintiff for any rescission or release.

Since the evidence is undisputed that the plaintiff was unable to get the Oldsmobile franchise under the terms of the contract, he was obligated to repurchase the parts and supplies named in the contract and his refusal to repurchase amounted to a breach of that contract.

The evidence demanded a verdict for the plaintiff; therefore, the court erred in denying the motion for new trial.

*Judgment reversed. Quillian and Nichols, JJ., concur.*